**K.W. THOMPSON TOOL COMPANY, INC., Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

No. 87–1536.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1987.

Decided Jan. 14, 1988.

David Shaughnessy with whom John Wall, Cullen & Wall, Boston, Mass., Steven Gordon and Shaheen, Cappiello, Stein & Gordon, Concord, N.H. were on brief, for plaintiff, appellant.

Howard S. Scher, Appellate Staff, Civ. Div., with whom Robert S. Greenspan, Appellate Staff, Civ. Div., Richard K. Willard, Asst. Atty. Gen., Washington, D.C., and Richard V. Wiebusch, U.S. Atty., Concord, N.H. were on brief, for defendant, appellee.

Before BOWNES and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

BOWNES, Circuit Judge.

Plaintiff-appellant, K.W. Thompson Tool Company, Inc. (KWT), filed suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, against the United States, the United States Environmental Protection Agency (EPA) and six individual former or present EPA employees, based upon alleged negligent acts and/or omissions of defendants in connection with a criminal prosecution instituted against KWT and three of its officers. With plaintiff's consent, the district court dismissed the EPA and EPA employees as defendants. The United States filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The district court found that one claim, Count III, did not fall within the terms of 28 U.S.C. § 1346(b) and that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), barred the remainder of KWT's claims and granted the motion to dismiss. *K.W. Thompson Tool Company, Inc. v. United States*, 656 F.Supp. 1077 (D.N.H.1987). Plaintiff appeals the dismissal of its complaint.[1] We affirm.

I.

KWT is a New Hampshire corporation with its principal place of business in Rochester, New Hampshire. KWT primarily makes firearms, and in the course of its manufacturing discharges substances into a nearby ditch and lagoon which flow into the Cocheco River. Such discharges are regulated under both state and federal law.

Beginning in 1980, KWT had various contacts with the New Hampshire Water Supply and Pollution Control Commission (NHWSPCC) regarding its compliance with the environmental laws. As a result of an EPA notification of a violation, KWT, on

---

* Of the District of Massachusetts, sitting by designation.

1. The court also granted the government's motion for sanctions because plaintiff sued the individual defendants as well as the United States. No appeal from this ruling has been taken.

November 12, 1982, applied to the EPA for a National Pollutant Discharge Elimination System (NPDES) permit which would establish discharge standards. The first application was returned for correction in February, 1983. KWT alleges it relied on information supplied by the EPA in preparing the answers that the EPA requested be changed. The revised application was submitted on or about April 1, 1983, and a preliminary NPDES permit issued on October 23, 1983. The final permit was issued on March 14, 1984.

After an investigation, the EPA initiated a criminal action against KWT. A fifty-count indictment, charging violations of federal environmental laws, was returned against KWT and three of its officers on March 18, 1985. We quote the district court's statement of the termination of the criminal proceedings:

On July 1, 1985, pursuant to a plea agreement, KWT pled guilty to Counts 4–18 (negligent discharge of pollutants into a water of the United States, in violation of 33 U.S.C. §§ 1311(a) and 1319(c)(1)), Count 44 (disposal of hazardous substances without a permit, in violation of 42 U.S.C. § 9603(c)), and Count 46 (failure to notify appropriate government agency of release of specified hazardous substances without a permit, in violation of 42 U.S.C. § 9603(b)). In exchange for these guilty pleas, the United States dismissed with prejudice Counts 1, 2, 3, 19–43, 45, and 47–50 with respect to KWT, and all counts were dismissed with respect to the corporate officers. KWT was ordered to pay a total fine of $75,000 and was placed on probation for a period of one year or until the fine was paid. KWT contends that its decision to plead guilty to the above-detailed counts was a "business judgment" made to avoid loss of its federal license to manufacture firearms and to avoid further expense and loss of employee time and effort. KWT does not concede that it was, in fact, guilty of these or any of the charges on which it was indicted.

656 F.Supp. at 1080–81. The FTCA suit followed.[2] The government has not asserted that the guilty plea is a collateral estoppel bar to any of the issues in this action. *See generally,* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4474 at 759–761 (Supp.1987). The only issue, therefore, is the application of the discretionary function exception.

II.

The FTCA provides:

(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The discretionary function exception states:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the

---

**2.** Plaintiff's original complaint included claims based upon 42 U.S.C. § 1983 and named additional state and private defendants. The amended complaint, which is the one before us, dropped the section 1983 claim and the additional defendants.

Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Three Supreme Court cases have addressed the issue of the application of section 2680(a) to an FTCA action. The first is *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The case arose out of an explosion of two ships which leveled the port of Texas City, Texas, and killed and injured many people. Fertilizer had been loaded aboard two ships for shipment to Europe under a program instituted by the United States to increase the food supply in areas under post-war military occupation. "This fertilizer had been produced and distributed at the instance, according to the specifications and under the control of the United States." *Id.* at 18, 73 S.Ct. at 956. The fertilizer, which had been sold to the French Government had been loaded on the ships by independent stevedores hired by the French. The theory of liability was

> that the Federal Government had brought liability on itself for the catastrophe by using a material in fertilizer which had been used as an ingredient of explosives for so long that industry knowledge gave notice that other combinations of ammonium nitrate with other material might explode. The negligence charged was that the United States, without definitive investigation of FGAN [Fertilizer Grade Ammonium Nitrate] properties, shipped or permitted shipment to a congested area without warning of the possibility of explosion under certain conditions.

*Id.* at 23, 73 S.Ct. at 961.

The Court focused on the words of section 2680(a) and its legislative history. It first noted that its decisions "have interpreted the Act to require clear relinquishment of sovereign immunity to give jurisdiction for tort actions." *Id.* at 31, 73 S.Ct. at 965. This is followed by the statement: "One only need read § 2680 in its entirety to conclude that Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions." *Id.* at 32, 73

S.Ct. at 966. The Court explained that the discretion protected by section 2680(a) was "the discretion of the executive or the administrator to act according to one's judgment of the best course...." *Id.* at 34, 73 S.Ct. at 967. The holding of the Court is that the discretionary function exception applies to subordinates as well as policymakers:

> It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

*Id.* at 35–36, 73 S.Ct. at 968 (footnotes omitted). The reach of the holding to subordinates was somewhat curtailed by the statement that "[t]he decisions held culpable were all responsibly made at a planning rather than operational level...." *Id.* at 42, 73 S.Ct. at 971. There was a trenchant dissent by Justice Jackson, joined by Justices Douglas and Clark.

The next case in the triumvirate is *Indian Towing, Inc. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Writing for a majority of five, Justice Frankfurter held that the United States was liable for the negligence of the Coast Guard in maintaining a lighthouse beacon near the mouth of the Mississippi. The Coast Guard had built the lighthouse and maintained it. Ships relied on it. As a result of the light going out, plaintiff's ship ran aground and was damaged. The government conceded

that the discretionary function exception was not involved. It argued that, since under 28 U.S.C. § 1346(b) the United States can only be held liable for activity for which a private individual would be liable, suit was improper because private persons do not operate lighthouses. The Court rejected this argument and held the government liable under the FTCA. It stated the issue as one of liability at the "operational level" of government activity, citing to *Dalehite*, 346 U.S. at 42, 73 S.Ct. at 971. It pointed out that "it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance, must perform his 'good Samaritan' task in a careful manner." 350 U.S. at 64–65, 76 S.Ct. at 124. The Court held:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

350 U.S. at 69, 76 S.Ct. at 126–27. In the paragraph immediately following this holding, the Court held that *Dalehite* was not controlling, stating: "The differences between this case and *Dalehite* need not be labored. The governing factors in *Dalehite* sufficiently emerge from the opinion in that case." *Id.* (footnote omitted). Not surprisingly, Justice Reed, who authored the majority opinion in *Dalehite*, dissented. He was joined by three other justices.

The final case in this line is *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). It was a unanimous opinion authored by then Chief Justice Burger. The question was whether the United States could be held liable under the FTCA for the negligence of the Federal Aviation Administration in failing to in-

spect two aircraft for fire and safety hazards before certifying the planes for use in commercial aviation. In the two cases consolidated for appeal, the Ninth Circuit had rejected the discretionary function exception to the FTCA and held that the United States was liable under the California "Good Samaritan" rule. *Id.* at 801–03, 104 S.Ct. at 2758–59. The Court first examined in detail the Federal Aviation Act and the regulations promulgated thereunder. It noted that by regulation the FAA "made the applicant itself responsible for conducting all inspections and tests necessary to determine that the aircraft comports with FAA airworthiness requirements." *Id.* at 805, 104 S.Ct. at 2760. As in *Dalehite*, the Court then examined the wording and legislative history of the FTCA and the discretionary function exception to it. The Court was impressed by the testimony of a government witness before the House Committee on the Judiciary that section 2680(a) was "designed to preclude application of the Act to a claim based upon an alleged abuse of discretionary authority by a regulatory or licensing agency...." And "[i]t is neither desirable nor intended that the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act should be tested through the medium of a damage suit for tort." *Id.* at 809–10, 104 S.Ct. at 2762. The Court lauded *Dalehite*'s examination of the nature and scope of section 2680(a), quoted *Dalehite*'s holding, 346 U.S. at 35–36, 73 S.Ct. at 967–68, and rejected the argument that *Dalehite* had been eroded by *Indian Towing* and *Eastern Airlines, Inc. v. Union Trust Co.*, 95 U.S.App.D.C. 189, 221 F.2d 62, *summarily aff'd sub nom. United States v. Union Trust Co.*, 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796 (1955). The Court stated: "While the Court's reading of the Act admittedly has not followed a straight line, we do not accept the supposition that *Dalehite* no longer represents a valid interpretation of the discretionary function exception." 467 U.S. at 811–12, 104 S.Ct. at 2763. The Court stressed that the government conceded that the discretionary func-

tion exception was not implicated in *Indian Towing*.[3] It also stated, "the summary disposition in *Union Trust Co.* cannot be taken as a wholesale repudiation of the view of § 2680(a) set forth in *Dalehite*." 467 U.S. at 812–13, 104 S.Ct. at 2764 (footnote omitted). It is fair to conclude that *Indian Towing* should no longer play a role in determining the application of section 2680(a); *Dalehite* and *Varig* are now the beacon cases.

Building on and refining *Dalehite*, the Court pointed to the following factors as determinative of whether the discretionary function exception barred suit under the FTCA. The basic inquiry is "whether the challenged acts of a government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." 467 U.S. at 813, 104 S.Ct. at 2764. The discretionary function exception "plainly was intended to encompass the discretionary acts of the Government acting in its role of regulator of the conduct of private individuals." *Id.* at 813–14, 104 S.Ct. at 2764. The Court then turned to the FAA certification process involved in the two cases. It noted first that the Secretary of Transportation had the duty, under the applicable statute, "to promote safety in air transportation by promulgating reasonable rules and regulations governing the inspection, servicing and overhaul of civil aircraft," *id.* at 816, 104 S.Ct. at 2766, and that the statute provided that the manner in which this was done was committed to the discretion of the Secretary. *Id.* The Secretary developed a system whereby the responsibility for conforming to FAA regulations was imposed upon the manufacturer and operator with the FAA retaining the responsibility for policing compliance. Compliance review was accomplished by a spot-check system. *Id.* at 816–17, 104 S.Ct. at 2765–66. The Court held:

The FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the "nature and quality" protected by § 2680(a). When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind.

. . . .

It follows that the acts of FAA employees in executing the "spot-check" program in accordance with agency directives are protected by the discretionary function exception as well. *See Dalehite v. United States,* 346 U.S. at 36, 73 S.Ct. at 968.

*Id.* at 819–20, 104 S.Ct. at 2767–68.

### III.

In reviewing a ruling dismissing a complaint, all well-pleaded allegations are accepted as true. *Pujol v. Shearson/American Express, Inc.,* 829 F.2d 1201, 1202 (1st Cir.1987). The complaint here consists of forty-three paragraphs of general allegations and twelve specific counts. Counts I, VIII, IX, X, XI, and XII allege that the EPA, four named employees, and its former administrator, William Ruckelshaus, breached a "ministerial" duty to properly train supervisory personnel and subordinates and supervise subordinates in the investigation of alleged violations of the Clean Water Act and in implementing and following internal EPA procedures. Count X also alleges that Ruckelshaus breached his duty "to ensure that his public stance on gun control was not employed as an impermissible basis upon which EPA decisions were made."

Count IV alleges that the EPA breached its "ministerial" duty to issue NPDES permits which complied with "Federal Water Quality In Stream Criteria" and were based

---

**3.** Several cases indicate that if the claims are barred by the discretionary function exception, the court is without subject matter jurisdiction. *See, e.g., Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1194 (D.C.Cir. 1986); *Berkovitz by Berkovitz v. United States,* 822 F.2d 1322, 1325 (3d Cir.1987), *petition for cert. filed,* 56 U.S.L.W. 2053 (Sept. 25, 1987).

This is logical but it results in an anomaly. The rule is that subject matter jurisdiction cannot be waived. If, however, the government can waive the discretionary function exception, then either § 2680(a) does not go to subject matter jurisdiction or constitutes an exception to the rule that jurisdiction cannot be waived.

on valid chemical and biological data, and breached its "ministerial" duty to inform KWT of changes in the applicable Water Quality In Stream Criteria, as those changes affected NPDES permits issued to KWT. Count V alleges that the EPA breached its "ministerial" duty to issue permits based upon valid and proper scientific data by failing to use the available flow data for the Cocheco River. Count VI alleges that the EPA breached its "ministerial" duty to detect and correct "gross" errors in issuing NPDES permits.

Count II alleges that the EPA breached its "ministerial" duty by instituting criminal proceedings against KWT "contrary to published and announced agency policies."

Count III alleges that the EPA through its agent, Phillip Andrew, obstructed justice by destroying exculpatory evidence and intimidating witnesses. The factual basis for this allegation is contained in paragraph 39 of the complaint which states in pertinent part that Andrew "approached one or more individuals in the vicinity of Rochester, New Hampshire, and indicated that these individuals should remove a large tire dam and other debris and impediments in and around a certain unnamed ditch."

■ The breaches of duty alleged in Counts I and IV–XII can be described as failure to properly train and supervise EPA personnel and the failure to use valid scientific data in issuing NPDES permits. In this connection, it is to be noted that most of the permit-issuing data was furnished the EPA and/or NHWSPCC by firms retained by KWT for that purpose, specifically Eastern Analytical, Peck Environmental Laboratories and Dufresne–Henry. Paragraphs 16, 23, 25, and 26 of Complaint. We note that relying on the violator to furnish the data for obtaining an NPDES permit is akin to the FAA procedure, approved in *Varig*, of putting the initial responsibility for complying with air safety regulations on the airplane manufacturer and operator.

It is important to point out what the complaint does not allege. There is no claim that any section of the Water Pollution and Prevention Control Act (Clean Water Act), 33 U.S.C. §§ 1251–1369, or any EPA regulations issued thereunder were violated by the defendants. There is no allegation that the EPA or NHWSPCC exceeded its authority.[4] KWT does not claim that it was not polluting the waters involved, only that the pollution was not as bad as the EPA charged.

We next turn to the enabling Act:

§ 1252. Comprehensive programs for water pollution control

(a) Preparation and development

The Administrator shall, after careful investigation, and in cooperation with other Federal agencies, State water pollution control agencies, interstate agencies, and the municipalities and industries involved, prepare or develop comprehensive programs for preventing, reducing, or eliminating the pollution of the navigable waters and improving the sanitary condition of surface and underground waters. In the development of such comprehensive programs due regard shall be given to the improvements which are necessary to conserve such waters for the protection and propagation of fish and aquatic life and wildlife, recreational purposes and the withdrawal of such waters for public water supply, agricultural, industrial, and other purposes. For the purpose of this section, the Administrator is authorized to make joint investigations with any such agencies of the condition of any waters in any State or States, and of the discharge of any sewage, industrial wastes, or substance which may adversely affect such waters.

33 U.S.C. § 1252(a). The provisions for standards and enforcement are found in 33 U.S.C. §§ 1311–1319. There can be no question that the law directing the EPA to develop comprehensive programs for water pollution control and the statutory provi-

---

**4.** It has been held that implicit in *Varig* and *Dalehite* is the proposition that a "decision cannot be shielded from liability if the decision-maker is acting without actual authority." *Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1196 (D.C.Cir.1986).

sions for standards and their enforcement invoke the use of agency discretion. The only thing mandatory is that comprehensive programs for water pollution control be developed. The development and administration of such programs depend upon agency discretion.

We find nothing in the complaint from which it could be found that the EPA or its employees were not performing a discretionary function as that term has been defined in *Varig.* As in *Varig,* we are dealing with a regulatory agency which has the discretion to decide how it will carry out its mandate. The repeated use of the label "ministerial" in the complaint does not, without more, overcome the discretion vested in the agency's administration and enforcement of the Clean Water Act. Those counts in the complaint alleging breach of duty are riven by the *Dalehite–Varig* principles.[5]

In *Shuman v. United States,* 765 F.2d 283 (1st Cir.1985), we applied the *Dalehite–Varig* principles to a negligence action for asbestos-produced injuries to a shipyard worker. An FTCA suit had been brought against the United States for shipowner negligence under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). The claim of negligence was predicated on an alleged duty under the Walsh–Healey Act, 41 U.S.C. § 35(e), to warn of the dangers involved in working with asbestos or to issue regulations governing its use. We concluded that Walsh–Healey required the exercise of discretion by the Navy in the formulation, application, and enforcement of safety measures for workers and that the duty to comply with safety standards was imposed on the government contractor. We concluded that the safety standards issued by the government were advisory only.

Other circuits have followed *Dalehite–Varig* in considering the application of section 2680(a). Relying on *Varig,* the Third Circuit held that the Atomic Energy Commission's decisions about the method and manner of plant inspections were committed to its discretion. *Merklin v. United States,* 788 F.2d 172, 174 (3d Cir.1986). The Ninth Circuit has held that under the principles of *Varig* and *Dalehite,* "[t]he acts of OSHA inspectors in executing agency directives are protected by the discretionary function exception." *Cunningham v. United States,* 786 F.2d 1445, 1447 (9th Cir.1986). In *Wysinger v. United States,* 784 F.2d 1252 (5th Cir.1986), the court held that a governmental decision not to have a lifeguard at a swimming site in a national forest was one within the discretionary function of the agency. The court noted, *inter alia,* that the basic thrust of *Dalehite* "was completely reaffirmed" in *Varig. Id.* at 1253. After a careful analysis of *Varig,* the Sixth Circuit held that section 2680(a) barred an FTCA suit by an injured worker alleging negligent inspection of and failure to provide safety training in the rail yard where he worked. The yard was owned by the United States and operated by Chrysler Corporation, plaintiff's employer. *Feyers v. United States,* 749 F.2d 1222, 1226 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985). In concluding that a claim against the Nuclear Regulatory Commission was barred by the discretionary function exception, the Third Circuit used language that is applicable here:

> Thus, the Commission determines what information should be collected and how, whether incidents are to be investigated and in what manner, and what data should be disseminated and in what form. In formulating the means to accomplish its regulatory objectives, the agency must engage in the same balancing the Court spoke to in *Varig.*

*General Public Utilities Corp. v. United States,* 745 F.2d 239, 244 (3d Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985).

■ We next turn to Count II, which alleges that the EPA breached its duty by

---

5. We recognize that Count X also alleges that William Ruckelshaus (former EPA administrator) breached his duty "to ensure that his public stance on gun control was not employed as an impermissible basis upon which EPA decisions were made." It is not within our province to determine what motivates agency action, only whether such action was legally taken.

initiating criminal prosecution rather than pursuing civil remedies. KWT points to the Environmental Protection Agency Civil Penalty Policy [Federal Laws], Env't Rep. (BNA) 41:2991 (Feb. 16, 1984), and the final draft of the EPA's policy statement entitled Justice on Private Party Cleanup Settlements under Superfund, 15 Env't Rep. (BNA) 1356 (Nov. 29, 1984), as mandating civil action. Thus, KWT claims that the decision to prosecute KWT criminally was made in breach of the EPA's duty to follow its own policy.

The initial answer to plaintiff's contention comes from the very EPA statements KWT cites. Both are intended to act as general guidelines, not specific, inflexible and mandatory rules. Each implicitly recognizes that the decision to prosecute is one within the Agency's discretion which entails not a rigid application of rules but a weighing process. Various factors to be considered in arriving at a decision are listed and discussed. The violator's willingness to cooperate is simply one factor. *See* Environmental Protection Agency Civil Penalty Policy at 41:3000; Justice on Private Party Cleanup Settlements under Superfund, 15 Env't Rep. at 1362.

The second publication explicitly states its advisory nature:

> The policies and procedures set forth here, and internal Government procedures adopted to implement these policies, are intended as guidance to Agency and other Government employees. They do not constitute rulemaking by the Agency, and may not be relied on to create a substantive or procedural right or benefit enforceable by any other person. The Government may take action that is at variance with the policies and procedures in this memorandum.

Justice on Private Party Cleanup Settlements under Superfund, Env't Rep. at 1363.

Decisions concerning when, whether and whom to prosecute have traditionally been considered discretionary and have been held to fall within the discretionary function exception of 28 U.S.C. § 2680(a). *Pooler v. United States,* 787 F.2d 868, 871

(3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986); *Gray v. Bell,* 712 F.2d 490, 513–14 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *Bernitsky v. United States,* 620 F.2d 948, 955 (3d Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980); *Smith v. United States,* 375 F.2d 243, 247–48 (5th Cir.), *cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). All the components of the final determination—whether, when, whom and how—reflect the decision-maker's judgment of how best to enforce compliance and to deter misconduct in others. We would be engaging in judicial "second guessing," as well as trespassing upon an executive function, were we to interfere with the prosecutorial decision-making process.

We agree with the district court that Count III, which alleges obstruction of justice by the EPA through one of its employees, fails to state a civil cause of action under New Hampshire law and hence does not fall within 28 U.S.C. § 1346(b). 656 F.Supp. at 1083–84.

*For the foregoing reasons, the judgment of the district court is affirmed.*