Joann MARN, Administratrix of the Estate of John Marn, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 81–1122.

United States District Court, W.D. Pennsylvania.

July 28, 1987.

Morley M. Azorsky, Oliver N. Hormell, California, Pa., for plaintiff.

Thomas Rees, Trial Atty., Torts, U.S. Dept. of Justice, Civ. Div., Washington, D.C., Asst. U.S. Atty. Craig R. McKay, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

This opinion addresses the defendant's renewed motion to dismiss this action. The defendant relies upon the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), contending that the decision of the United States Supreme Court in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), is controlling.

Plaintiff brings this action in her capacity as the administratrix of the estate of John Marn, deceased. The complaint alleges that on September 19, 1979, a clamp was incorrectly attached to a cable and escape capsule in an air intake shaft at the Mathies Coal Company mine. Plaintiff further alleges that agents of the United States, namely a civil engineer and an inspector from the Federal Mine Safety and Health Administration (MSHA), were present at the mine on the aforesaid date and were conducting an inspection. Plaintiff contends these individuals allowed plaintiff's decedent to enter the escape capsule and to be lowered into the mine. According to the complaint, the capsule was lowered approximately 100 feet when the cable became slack and the capsule fell approximately 185 feet to the bottom of the shaft, resulting in the death of John Marn.

The complaint alleges that the government was negligent in that MSHA and its servants, agents and employees ordered a change in the manner in which the escape capsule was to be attached to the cable without suggesting any method of attaching the capsule, and that use of a clamp was approved by an MSHA civil engineer without knowledge of how it should be installed. In addition, plaintiff's complaint alleges that the MSHA engineer made an inspection of the escape capsule at the air intake shaft, informed company and union officials of the fact that he had made an inspection, but failed to shutdown the mine, although the attachment was improper. Plaintiff contends that the MSHA civil engineer did nothing to inform the mine officials, union representatives, or plaintiff's decedent that the civil engineer himself did not know the proper way to use the clamp to attach the escape capsule to the cable. Finally, plaintiff contends that the MSHA civil engineer did nothing to stop plaintiff's

decedent from entering the capsule or from ceasing operation of the capsule, despite the fact that the engineer himself was neither knowledgeable about the safety of the capsule nor was absolutely certain that it was safe.

In ruling upon a motion to dismiss, this Court must construe all allegations in the plaintiff's complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The United States Supreme Court described the standard to be applied as follows:

> When a federal court reviews the sufficiency of a complaint, before reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that in passing on a motion to dismiss ... the allegations of the complaint should be construed favorably to the pleader.

*Id.* at 236, 94 S.Ct. at 1686.

This Court previously has had an opportunity to address defendant's contention that the discretionary function exception to the Federal Tort Claims Act entitles the government to judgment in its favor. In an opinion dated September 14, 1982, this Court denied defendant's motion to dismiss, holding that given the factual allegations of plaintiff's complaint the discretionary function exception would not operate as a bar to the relief requested. Defendant has renewed its motion, relying upon a change in the applicable law.

The Federal Tort Claims Act, [FTCA] 28 U.S.C. § 1346(b), provides in pertinent part as follows:

> The district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The Federal Tort Claims Act constitutes a limited waiver of the sovereign immunity of the United States. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

An important exception to the waiver of sovereign immunity contained in the Federal Tort Claims Act concerns so-called "discretionary functions." Title 28 U.S.C. § 2680 provides that the Act shall not apply to:

> Any claim based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused.

In its opinion of September 14, 1982, this Court relied upon the Third Circuit's decision in *Bernitsky v. United States*, 620 F.2d 948 (3d Cir.1980), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980). Under *Bernitsky*, to determine the applicability of the discretionary function exception, the Court must analyze "not merely whether judgment was exercised but also whether the nature of the judgment called for policy considerations." *Bernitsky* at 953. Employing this standard, the Court compared the facts alleged in plaintiff's complaint with two hypothetical fact patterns described by the district court in *Blessing v. United States*, 447 F.Supp. 1160 (E.D.Pa.1978). In the first hypothetical, the *Blessing* Court stated that if failure to inspect allegedly defective equipment was the result of an authorized decision to limit the scope of an inspection due to the government's lack of manpower,

time, or the like, the discretionary function exception would be applicable, because the failure to inspect would involve judgment exercised on the basis of policy considerations. *Blessing* at 1179. This factual pattern would qualify as a policy consideration because an administrative agency must be given the ability to set priorities to limit its work in accordance with that priority scheme.

In contrast, under the second hypothetical fact pattern, the *Blessing* Court would have found the discretionary function exception inapplicable. In this second fact pattern, a policy decision to inspect equipment is presumed. Under such circumstances, the failure to inspect would not be grounded upon an authorized policy decision, and a plaintiff could recover if negligence were actually demonstrated.

In its previous opinion, this Court concluded that the factual situation alleged by plaintiff's complaint fell squarely within the second hypothetical fact pattern. We stated "there is no policy decision present in this case; rather, the plaintiff contends that an inspection was actually made and that the inspection was conducted in a negligent fashion. The Court views this as a non-policy professional matter for which plaintiff may recover if certain factors are established." (Slip op. at 7).

As defendant points out, the law governing the discretionary function exception has changed since the date of this Court's previous opinion. In *Varig Airlines, supra,* the Supreme Court in effect redefined the meaning of discretionary activity under the Federal Tort Claims Act.

The respondents in *Varig Airlines* had brought actions against the United States under the Federal Tort Claims Act for damages sustained in connection with fires occurring on board two aircraft. The respondents alleged that the Civil Aeronautics Agency, the predecessor to the Federal Aviation Administration (FAA), was negligent in that it issued a certificate for two particular aircraft based upon the agency's finding that the aircraft fulfilled minimum safety standards. In both cases, the Ninth Circuit held that the discretionary function

exception did not apply, viewing the inspection of aircraft for compliance with air safety regulations as a function which does not entail the sort of policy-making discretion contemplated by the discretionary function exception.

The Supreme Court reversed, stating that it is the nature of the governmental conduct, rather than the status of the actor, which determines whether the discretionary function exception will apply. The exception covers "not only agencies of government ... but all employees exercising discretion." 467 U.S. at 813, 104 S.Ct. at 2764 (*quoting Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)). Under the regulations promulgated by the FAA, the applicant for a safety certificate, and not the federal agency, is responsible for conducting all inspection and tests necessary to determine that an aircraft comports with FAA airworthiness requirements. In other words, "the basic responsibility for satisfying FAA air safety standards rests with the manufacturer, not with the FAA. The role of the FAA ... is merely to police the conduct of private individuals by monitoring their compliance with FAA regulations." 467 U.S. at 815, 104 S.Ct. at 2765.

Emphasizing the legislative history, the Court observed that Congress plainly intended to exempt the discretionary acts of the government acting in its role as a regulator of the conduct of private individuals, noting that the discretionary function exception was added "to make clear that the [FTCA] was not to be extended into the realm of the validity of legislation or discretionary administration action." 467 U.S. at 810, 104 S.Ct. at 2763. Quoting from its previous decision in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Court stated that "where there is room for policy judgment and decision, there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *Id.* at 35–36, 73 S.Ct. at 967–68. The Court concluded that the FAA's implementation of the FAA mechanism for com-

pliance review "is plainly discretionary activity of the nature and quality protected" by the discretionary function exception. 467 U.S. at 819, 104 S.Ct. at 2767.

■ The Third Circuit has recently interpreted *Varig Airlines* as holding that the discretionary function exception exempts the United States from claims based on (1) discretionary planning level acts and omissions, (2) discretionary operational acts and admissions, and (3) non-discretionary operational level acts and omissions taken in furtherance of planning level discretionary decisions. *Kevan Berkovitz v. United States*, 822 F.2d 1322, 1329–30 (3d Cir. 1987). *Berkovitz* holds that, under *Varig Airlines*, the district court must determine whether it is the party subject to government regulation which bears the responsibility for satisfying the agency's safety standards and whether the role of the agency is merely to police the conduct of private individuals by monitoring their compliance with the applicable regulations. This determination is to be made by examining the agency regulations as a whole. *Berkovitz*, at 1332. Where the role of the federal agency is simply to assure that the regulated entity is in compliance with federally mandated standards, implementation of the compliance review procedure is "plainly discretionary activity." *Varig Airlines* at 819.

In *Berkovitz*, the plaintiff alleged negligence on the part of the Division of Biologic Standards, a division of the National Institutes of Health, on the basis that the Division had licensed a private manufacturer for production of a type of oral polio vaccine. The plaintiff had received a dose of this vaccine and had contracted paralytic poliomyelitis shortly thereafter as a consequence of receiving the vaccine. The plaintiff contended that the United States was liable under the Federal Tort Claims Act for negligent licensing and approval of the polio vaccine.

Applying the *Varig Airlines* rationale, the Circuit held that responsibility for compliance with the Federal Food and Drug Administration's safety regulations rests with the manufacturer of the vaccine. The Food and Drug Administration merely retains the responsibility for policing compliance with its regulations. The Circuit concluded that, under these circumstances, the discretionary function exception was applicable; to hold that the exercise of an agency's discretion in determining compliance with safety regulations subjects the United States to liability whenever the agency "negligently fails to recognize and remove non-complying products ... would inhibit the agency's selection of the mechanism for compliance review" in direct contravention of the *Varig Airlines* decision. *Berkovitz*, at 1332.

In reaching this conclusion in *Berkovitz*, the Third Circuit relied upon a Seventh Circuit decision, the facts of which substantially parallel those of the instant case. In *Hylin v. United States*, 755 F.2d 551 (7th Cir.1985) (*Hylin II*), following remand from 469 U.S. 807, 105 S.Ct. 65, 83 L.Ed.2d 16 (1984),[1] the Court directed dismissal of a complaint alleging negligence of a federal mine inspector for failing to discover a mine operator's non-compliance with mandatory safety regulations. The Court held that the discretionary function exception barred the suit because the statute reposed discretion in the mine inspectors to determine both whether non-compliance represented an imminent danger and how and when to require compliance. *Id.* at 554.

■ In the instant case, as in *Hylin*, the applicable regulations are those governing

---

1. By order of October 1, 1984, the United States Supreme Court granted certiorari, but vacated the judgment of the Seventh Circuit in *United States v. Hylin*, 715 F.2d 1206 (7th Cir.1983) (*Hylin I*); the case was remanded for further consideration in light of the United States Supreme Court decision in *Varig Airlines, supra.* In *Hylin I*, the Court of Appeals had held that the discretionary function exception to the Federal Tort Claims Act would not bar government liability on a theory of increase of risk of injury created by an allegedly negligent instruction given by inspectors of the Mine Enforcement and Safety Administration concerning the erection of a handrail in a mine. The theory of plaintiff's case in *Hylin I* was that the handrail had the foreseeable effect of diverting a worker past dangerous electrical equipment. Plaintiff's decedent was electrocuted when he came in contact with the electrical equipment.

deep mine safety. At the time the accident in question took place, these regulations were contained in Part 75, Subpart R, of Title 30 of the Code of Federal Regulations, specifically, §§ 75.1704—75.1704-2 governing escapeways, escape facilities and escapeway routes. Under these regulations it is clear that the primary responsibility for safety compliance rests with the mine operator. The duty of the MSHA officials is to assure that the mine operator has complied with the regulations. For example, § 75.1704 provides that "escape facilities *approved by the Secretary or his authorized representative,* properly maintained and frequently tested, shall be present at or in each escape shaft or slope to allow all persons, including disabled persons, to escape quickly to the surface in the event of an emergency." (emphasis added). Likewise, § 75.1704-1 provides that "this section sets out criteria by which district managers will be guided in approving escapeways and escape facilities. Escapeways and escape facilities that do not meet these criteria may be approved provided the operator can satisfy the district manager that such escapeways and facilities will enable miners to escape quickly to the surface in the event of an emergency." These regulations are consistent with the discretion vested in mine inspectors under § 813 of the Mine Safety and Health Act, 30 U.S.C. § 801, *et seq.*

At the time of the accident in question, employees of Mathies Coal Company and MSHA inspectors allegedly were inspecting an escape capsule at an air intake shaft of the Mathies mine for the purpose of determining compliance with federal standards. Plaintiff attempts to attach liability to the United States on the basis that its employee, i.e., an MSHA engineer, in the course of his inspection failed to ascertain that the escape capsule, and specifically the connection between the capsule and the cable supporting it, were absolutely safe. Plaintiff contends that the failure of the MSHA engineer to make such a determination was the proximate cause of plaintiff's decedent's death.

Viewing the regulations as a whole, with particular emphasis on § 75.1704, *et seq.*, it is apparent that the mine inspector is granted the authority to exercise independent judgment and discretion in determining the operator's compliance. Where mine inspectors "are required to exercise discretion in fulfilling their inspection and enforcement duties ... the enforcement activities of [the agency] are protected by the discretionary function exception." *Hylin II,* 755 F.2d at 554. Accordingly, plaintiff's claim against the government in this action is barred under the Federal Tort Claims Act. Defendant's renewed motion to dismiss will be granted.

An appropriate Order will be issued.