ESTATE OF Denny **BERNALDES**

v.

**UNITED STATES, Three Unnamed Inspectors of the Mine Safety and Health Administration.**

Civ. A. No. 94–0041–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

Feb. 17, 1995.

Sean J. Coleman and Wilfrid Kip Wood, Fairfax, VA, for plaintiff.

John F. Corcoran, U.S. Attorney's Office, Roanoke, VA, and Phyllis J. Pyles and Robin D. Smith, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, for defendants.

## MEMORANDUM ORDER

MICHAEL, District Judge.

The Estate of Denny Bernaldes ("Plaintiff") has brought this suit for a wrongful death allegedly caused by the failure of three Mine Safety and Health Administration ("MSHA") inspectors to discover safety violations at a mining operation. The Defendants argue that the "discretionary function exception" to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), mandates that this action be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(1), because a mine safety inspector's compliance determinations are discretionary within the meaning of the exception. The Magistrate Judge issued a Report and Recommendation rejecting the Defendants' argument and recommending that the motion to dismiss be denied because the discretionary function exception would not apply and because Virginia law would impose a duty on a private individual carrying out the governmental functions challenged here, and thus this court would have jurisdiction under 28 U.S.C. § 1346(b). Having reviewed the responses to the Magistrate's Report filed by the parties, along with the record in the case *de novo*, the court declines to follow the Magistrate's recommendation for the reasons set forth herein.

### I.

For the purpose of this ruling, the court accepts the Plaintiff's factual allegations as true. *Berkovitz v. United States*, 486 U.S. 531, 539, 108 S.Ct. 1954, 1960, 100 L.Ed.2d 531 (1988). The case arises out of an accident at the Clearbrook Mine & Mill ("Clearbrook Mine"), an aggregate and lime producing business operated by W.S. Frey, Inc. ("Frey") at Clearbrook, Virginia. Denny Bernaldes reported to his job as an alternate kiln burner operator at 3:30 p.m. on December 13, 1992. Sometime after 9:50 p.m. he returned from the kiln burner to the coal storage shed, where coal is stored before it is used as fuel. At around 11:30 p.m. when he did not return to the company office at the end of his shift, Halbard Myers, a Frey

employee, went looking for him. Myers found Bernaldes dead, buried up to his waist in coal, lying on his left side on a conveyor belt that feeds coal into the kiln burner through a tunnel beneath the coal storage unit. MSHA determined that Bernaldes fell from the top of the coal chute in the shed down into the tunnel, where he was buried alive by eight tons of falling coal. Medical examiners determined the cause of death to be asphyxiation.

The Estate of Denny Bernaldes ("Plaintiff"), which is represented by Bernaldes's widow, brought this action against the United States and Three Unnamed Inspectors of MSHA for negligently failing to discover safety violations at the Clearbrook Mine. The Plaintiff alleges that MSHA inspected the Clearbrook Mine on August 27, 1992, and failed to issue any citations for safety violations related to Bernaldes's death, even though the violations were in existence at the time of the inspection and the inspectors had a duty to discover the violations and issue citations to Frey. The particular safety violations at issue include the lack of a grate, railing, or safety harness in the coal shed, inadequate lighting, and inadequate communication equipment between personnel in the shed and outside the shed. MSHA cited Frey after Bernaldes's death for an unguarded opening at the top of the coal chute, failure to provide a safety belt and harness, and lack of adequate communication between the kiln burner operator and others outside the coal shed unit.

## II.

Whether the court has jurisdiction to adjudicate this unfortunate case turns on an analysis of the scope of the discretionary function exception. The exception provides that the United States is not liable for any claim "based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has attempted to define the contours of the discretionary function exception in a series of cases, from *Dalehite v. United States,* 346

U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) and *United States v. Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), to *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) and, most recently, *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). These contours, however, remain ill-defined, primarily because "courts have encountered some difficulty in applying [the discretionary function exception's] rather general terms to the myriad of fact patterns that predictably present themselves as litigants attempt to measure governmental conduct by the measuring stick of state tort law." *Baum v. United States,* 986 F.2d 716, 719–20 (4th Cir.1993).

According to the framework established in *Berkovitz* and carried forth in *Gaubert* the court must determine if an element of discretion is involved in the decision of the inspectors not to issue safety violations, and, if discretion is involved, whether this discretion is the type that is "inherently grounded in considerations of policy." *Baum,* 986 F.2d at 720–21; *see also Myers v. United States,* 17 F.3d 890, 894–95 (6th Cir.1994) (outlining "comparatively rigid two-step analysis" established in *Berkovitz* and *Gaubert* ). As to the first part of the test, in *Gaubert* the Court defined a discretionary act as "one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions." 499 U.S. at 325, 111 S.Ct. at 1275. A government agent's actions are not discretionary if they are "controlled by mandatory statutes or regulations." *Id.* If a government agent's actions are discretionary, to overcome a motion to dismiss a plaintiff must meet the second part of the test, by alleging facts to support a finding that the challenged actions are not "susceptible to policy analysis," *Baum,* 986 F.2d at 721, or "within the purview of the policies behind the statutes" pursuant to which the actions are taken, *Gaubert,* 499 U.S. at 333, 111 S.Ct. at 1279.

The Supreme Court has made clear in recent cases that if a government regulator's actions are discretionary, then the reach of the discretionary function exception is wide. While the Court, in *Berkovitz,* "specifically

reject[ed] the Government's argument [based on a broad reading of *Dalehite* and *Varig Airlines* ] that the exception precludes liability for any and all acts arising out of the regulatory programs of federal agencies," 486 U.S. at 538–39, 108 S.Ct. at 1959–60, in *Gaubert* the Court held that in determining whether an act involves policy judgment there is no bright line between "policy decisions" and "operational actions." 499 U.S. at 323, 111 S.Ct. at 1273. The actions of a low-level federal agent may fall within the exception so long as the actions "involv[e] the necessary element of choice and [are] grounded in the social, economic, or political goals of the statute and regulations...." *Id.*

 If a government agent is granted discretion, despite the fact that the discretion involves mere implementation of policy or planning decisions made by higher-level officials, there is a "strong presumption" that the discretion granted to the agent involves considerations of the same policies that led to the promulgation of the regulation, and thus there is a strong presumption that the discretionary function exception applies. *Id.* at 324, 111 S.Ct. at 1274. For better or for worse, under the majority's analysis in *Gaubert* it is not necessary, as Justice Scalia would have it in his concurrence in that case, that the discretion involve "policy*making* responsibility," *id.* at 337, 111 S.Ct. at 1281 (Scalia, J., concurring) (emphasis added), or that a government agent "weigh" policy considerations, *id.* at 338, 111 S.Ct. at 1281. It is sufficient if the actions are "grounded in" the policies of the regulatory regime. *Id.* at 322, 111 S.Ct. at 1273 (majority); *see also Baum,* 986 F.2d at 724 (Shedd, J., concurring) (noting that Justice Scalia's concurrence in *Gaubert* is the more appropriate framework for analyzing the discretionary function exception but that the court correctly applied the *Gaubert* majority's reasoning). This part of the inquiry is objective and depends on the nature of the inspectors' duties, not their subjective intent when carrying them out. *Varig Airlines,* 467 U.S. at 813, 104 S.Ct. at 2764.

### III.

 Application of the discretionary function exception is highly fact-specific. *Id.*

Though the Supreme Court cases outline the rough contours of the exception, in *Berkovitz* the Court refused to address the precise issue presented by the facts of this case: whether the discretionary function exception protects government agents who incorrectly make a compliance determination based on objective safety criteria. The Court determined that the answer to the question "hinges on whether the agency officials making that determination permissibly exercise policy choice." 486 U.S. at 545, 108 S.Ct. at 1963. In answering this question, the court will first consider whether the MSHA safety regulations grant MSHA inspectors discretion. The court will then turn to the question of whether the inspectors' actions are grounded in policy.

### A.

 The first part of the inquiry is not at all difficult. While the Plaintiff argues that the "binary choices" presented to the safety inspectors when determining if the MSHA safety regulations have been met are not discretionary within the meaning of the discretionary function exception, (P.'s Mem. in Opp. at 3), an examination of the regulations proves otherwise. The inspectors must exercise a considerable degree of choice and judgment when determining if an operation is in compliance with the agency's safety policies. Deciding whether lighting is "sufficient to provide safe working areas," 30 C.F.R. § 56.17001, and whether the worker has "effective means" of safely handling loose materials, *id.* § 56.16002, requires the exercise of considerable policy judgment. Likewise, considerable judgment must be exercised in determining whether there is a "danger of falling" such that safety belts and lines must be employed, *id.* § 56.15005, or whether such "hazardous conditions exist" that an employee may not be permitted to work alone, *id.* § 56.18020.

The regulations are not sufficiently specific for the court to consider them "mandatory" within the meaning of *Gaubert. See* 499 U.S. at 325, 111 S.Ct. at 1275. The regulations are framed in general terms and the inspectors are not given detailed criteria to guide

the exercise of their discretion. The regulations do not "specifically prescribe a course of action," *Berkovitz*, 486 U.S. at 535, 108 S.Ct. at 1958, that the inspectors must follow in determining what is safe and what is not. Moreover, not only must the inspectors apply their expertise to determine what is and what is not "hazardous" they also must use their discretion to determine how best to insure that their inspections will uncover violations. The regulations do not spell out detailed inspection procedures.

The facts of this case contrast to those of *McMichael v. United States*, 856 F.2d 1026 (8th Cir.1988), upon which the Plaintiff relies in support of its argument that the inspectors do not exercise discretion. In *McMichael* a federal munitions factory inspector was required to apply a safety check list, one item of which required the officer to make sure the plant evacuated all personnel in the event of an electrical storm. *Id.* at 1033. The inspector followed "specific procedures mandated by the Defense Department." *Id.* Determining the presence or absence of a storm is not the same as determining whether a work-place is hazardous within the meaning of an agency's policies, and where inspectors are given a detailed check-list to guide their actions there is no discretion in the inspection process.

Cases more analogous to this one support the court's conclusion that the MSHA inspectors exercise discretion. As the Sixth Circuit concluded, an MSHA inspector's duties under the regulations "are replete with choice and, thus, discretion." *Myers*, 17 F.3d at 895. The Tenth Circuit reached the same conclusion. *See Ayala v. United States*, 771 F.Supp. 1097, 1110 (D.Colo.1991) (fact that 30 U.S.C. § 814(a) requires inspector to issue citation if he "believes" that an operator has violated the chapter "implies that inspectors exercise judgment or choice in formulating their belief"), *aff'd in relevant part*, 980 F.2d 1342 (10th cir. 1992); *see also Kelly v. United States*, 924 F.2d 355, 361 (1st Cir.1991) (DEA manual requiring that leaks be reported when supervisors receive an "allegation or complaint" grants agency discretion since agents are entitled to interpret the words narrowly). Even where regulations spell out

specific safety requirements, the inspection *process* may not be specific and thus may provide the necessary element of discretion. Where Coast Guard inspectors failed to uncover the fact that a ship failed to install handrails on a stairwell, as specifically required by regulation, the Seventh Circuit ruled that the discretionary function exception nonetheless applied because "[t]he discretionary function exception shields the entire inspection process including alleged negligent omissions. If the discretionary function exception could be pierced by showing negligent acts in implementing the discretionary function, the exception would be no shield at all." *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 515 (7th Cir.1995).

The MSHA inspectors exercise discretion both in determining whether safety hazards are present to the extent that a citation is warranted and in formulating how best to undertake the inspection process. The MSHA regulations governing the inspections at issue here thus grant the inspectors discretion within the meaning of the discretionary function exception. Therefore, the court turns to the second element of the test, whether the inspector's discretionary actions are "grounded in" the policy of the MSHA regulatory regime.

## B.

The court must analyze the second prong of the test keeping in mind that the purpose of the discretionary function exception is to " 'prevent judicial second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. at 1959. Courts must be concerned not only with second-guessing policy decisions of federal agencies and agents, but also with disrupting the regulatory efforts of the federal government by exposing the government to tort liability for negligence in the course of carrying out the policies of a regulatory regime. *See Baum*, 986 F.2d at 720 (purpose of the discretionary function exception is to "protect the government from being hobbled in the discharge of its policy-driven duties by

tort suits"). Thus, the Supreme Court has concluded that there is a "nonexistent dichotomy between discretionary functions and operational activities." *Gaubert*, 499 U.S. at 326, 111 S.Ct. at 1275. Policy implementation as well as policymaking are protected. *Id.*

Since the test articulated in *Berkovitz* and *Gaubert* does not require a government agent to weigh or reweigh established agency policy independently for the discretionary function exception to apply, the Plaintiff's reliance on the Sixth Circuit's *Myers* opinion is unavailing. *Myers* determined that an MSHA safety inspector does not "permissibly exercise policy choice" when making a safety compliance determination. 17 F.3d at 898. Though the court determined that an inspection involves discretion, the court concluded that an inspector is not authorized to make these discretionary determinations based on anything other than objective safety criteria, reasoning that "the balancing of the interests of the miner and the mine owners, and the consideration of the most effective use of MSHA resources has been. done, first by Congress and then, to a greater degree, by the Secretary of Labor in promulgating the various safety regulations. The MSHA inspectors whose conduct is at issue ... are *not authorized* to reweigh these interests on a case-by-case basis. Rather, they are to determine compliance and, in the event of non-compliance, issue the mandatory citations and orders." *Id.* This court disagrees with the Sixth Circuit's analysis.

■ The *Myers* court erroneously concluded that an MSHA inspector is required to make substantive policy decisions before the discretionary function exception applies. Such a finding is not necessary to determine that an agent's actions are "grounded in considerations of policy." *Baum*, 986 F.2d at 721. Once a court concludes that a government agent exercises discretion, if that discretion is exercised in the course of carrying out the agent's policy-driven duties, then the discretionary function exception will cover the agent's actions. *Id.* The wide scope of this aspect of the exception is illustrated by the Supreme Court's example of the type of activity that would *not* be considered policy-based:

> There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Gaubert*, 499 U.S. at 325 n. 7, 111 S.Ct. at 1275 n. 7. Clearly a MSHA inspector's safety compliance determination is "based on the purposes that the regulatory regime seeks to accomplish." *Id.* The weight of authority cited by the Plaintiff in support of its argument that the inspectors did not exercise policy judgment predates the Supreme Court's *Gaubert* decision.

It is true, as the Plaintiff argues, that the cases where courts have found the discretionary function exception to apply have involved considerably more discretion and considerably more policy analysis than is granted to the MSHA inspectors here. In *Varig Airlines,* for example, FAA inspectors had the discretion to decide how frequently they would use spot-check safety inspections and could independently weigh how their limited resources could most effectively be used. 467 U.S. at 815–16, 104 S.Ct. at 2765–66. In *Gaubert*, government regulators had a wide range of options available in managing an ongoing savings and loan, and had to balance competing policy interests in the course of carrying out their duties. 499 U.S. at 325, 111 S.Ct. at 1275. This circuit's *Baum* decision involved the design and maintenance of a National Park Service parkway. The government's choice of which type of material to use in constructing parkway railings was "fundamentally described as a question of how to allocate limited resources among competing needs.... [T]he Park Service's decision in this regard was one bound up in

economic and policy considerations." *Baum,* 986 F.2d at 722; *see also Alderman v. United States,* 825 F.Supp. 742 (W.D.Va.1993) (allegations that government should have posted signs along parkway dismissed pursuant to the discretionary function exception).

The reasoning in these cases, however, supports the court's conclusion that the MSHA inspectors exercise policy-based discretion. The fact that the regulators in *Gaubert* were involved in the management of an on-going operation was not critical to the Court's analysis. The plaintiff attempted to overcome the fact that the regulators, overall, exercised considerable policy-based discretion by breaking the regulator's actions down into a series of decisions involving "the mere application of technical skills and business expertise." 499 U.S. at 331, 111 S.Ct. at 1278. The Court rejected the argument as resting on a false dichotomy between policy-making and operational activities. *Id.* The Court held that the discretionary function applied because the day-to-day activities of the regulators were "directly *related* to public policy considerations," *id.* at 332, 111 S.Ct. at 1279 (emphasis added), and because the advice the regulators gave to the savings and loan was "*within the purview* of the policies behind the statutes," *id.* (emphasis added). The actions of the MSHA inspectors may involve the application of objective safety criteria, as the Plaintiff argues, but the fact remains that the inspectors do exercise discretion and this discretion is "directly *related*" to the *policies* of the *regulatory regime* within which they serve.

Against the background of the mine safety act, it must be presumed that the Clearbrook Mine was inspected for policy reasons of primary concern to MSHA and that the inspector's actions were undertaken pursuant to this policy. *See Baum,* 986 F.2d at 721 ("we will not assume that government agents, in a particular case acted arbitrarily or on whim, disregarding . . . essential policy questions"). As codified at 30 U.S.C. § 801(g), Congress stated that protecting the health and safety of the nation's coal miners is one of the purposes of the Act. When applying the regulations promulgated pursuant to the statute, MSHA inspectors must base their inspections on the policy of promoting the health and safety of the nation's coal miners, since enforcement of health and safety standards is the purpose of the inspections. *See* 30 U.S.C. § 814(a). The Plaintiff has failed to allege facts to support the conclusion that the inspectors engaged in activities beyond the scope of their policy-based responsibilities and thus beyond "the purview of the policies behind the statutes." *Gaubert,* 499 U.S. at 333, 111 S.Ct. at 1279. Accordingly, this case must be dismissed for lack of jurisdiction.

### IV.

For the reasons set forth above, the Defendants' motion to dismiss for lack of subject matter jurisdiction will be granted. The court finds it unnecessary to address the Defendants' alternative argument that Virginia law would not impose a duty on a private individual carrying out the inspections undertaken by the government.