**Connie DEEL, Administratrix of the Estate of Everett Deel, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Acting By and Through the DEPARTMENT OF LABOR and the Mine Safety & Health Administration, Defendants.**

Civil A. No. 94–0166–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

April 4, 1996.

Carl E. McAfee, McAfee, Bledsoe & Associates, P.C., Norton, VA, for plaintiff.

John F. Corcoran, U.S. Attorney's Office, Roanoke, VA and Colette J. Winston, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for defendants.

TURK, District Judge.

I.

This case arises from a mining accident on November 18, 1992, which resulted in the death of Everett Deel. On that date, Deel was working as a continuous miner operator at the Dominion Coal Company's No. 1 Mine at Oakwood in Buchanan County, Virginia. While Deel was performing his duties, the mine roof collapsed and Deel was trapped in

the operator's compartment of the continuous miner. He was later pronounced dead.

The continuous miner operated by Deel did not have a safety canopy as required by the Mine Safety and Health Administration (MSHA). *See* 30 C.F.R. § 75.1710–1. The plaintiff alleges that inspectors from MSHA were negligent in failing to make a thorough inspection of the Dominion No. 1 mine, and for failing to issue citations to the coal company for its noncompliance with the agency's safety regulations. Also according to the plaintiff, the mine inspectors were negligent for not requiring the coal company to place additional roof supports in the area where the collapse occurred. The plaintiff further alleges that the agency failed to conduct mandatory inspections of the Dominion No. 1 mine by failing to provide their inspectors with adequate training. For each of these allegations, the court must determine whether the plaintiff has asserted facts sufficient to remove her claims from the protections of the discretionary function exception to the FTCA.

## II.

■ On this motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of persuasion because " '[t]he party who sues the United States bears the burden of pointing to ... an unequivocal waiver of immunity.' " *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995) (quoting *Holloman v. Watt,* 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984)). For purposes of the motion, the court accepts the factual allegations contained in the complaint as true. *Berkovitz v. United States,* 486 U.S. 531, 539, 108 S.Ct. 1954, 1960, 100 L.Ed.2d 531 (1988). Unlike a typical motion to dismiss on the pleadings, however, the court may also consider evidence that is beyond the scope of the pleadings to resolve the factual disputes concerning jurisdiction. *Williams,* 50 F.3d at 304. Furthermore, a dismissal for lack of jurisdiction will have no *res judicata* effects—the plaintiff may attempt to raise the same substantive issues before a court that will have the authority to hear them. *Id.*

## III.

■ "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). The Federal Tort Claims Act (FTCA) is a limited waiver of the United States' sovereign immunity, which gives the federal courts jurisdiction over actions for damages arising from the acts or omissions of agents or employees of the United States. *See* 28 U.S.C. §§ 1346(b), 2671; *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). However, if the discretionary function exception, codified at 28 U.S.C. § 2680, applies, "the jurisdictional grant is not available, and the federal court lacks jurisdiction to hear the case." *Williams,* 50 F.3d at 305 (citing *Johnson v. United States,* 949 F.2d 332, 335 (10th Cir. 1991)).

■ The discretionary function exception provides that the provisions of the FTCA will not apply to:

> Any claim based upon an act or omission of an employee of the Government ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Through a series of cases, from *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), to *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the United States Supreme Court has interpreted this provision and given guidance to the lower courts on how and when the exception is applicable. In *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988), the Court set forth a two-prong inquiry: (1) does the challenged conduct of the government agent or employee involve an element of judgment and choice, or is the employee bound to abide by a specifically prescribed course of action?; and (2) assuming that the conduct does involve judgment, does the exercise of that discretion involve a policy judgment? This

inquiry provides only guidance, however; it does not dictate which specific acts will fall within the exception. "Though the purpose underlying the discretionary function exception is well accepted, courts have encountered some difficulty in applying its rather general terms to the myriad of fact patterns that predictably present themselves as litigants attempt to measure governmental conduct by the measuring stick of state tort law." *Baum v. United States,* 986 F.2d 716 (4th Cir.1993) (noting that the statute itself does not define which governmental functions are to be deemed to be discretionary and therefore outside the scope of the FTCA).

■ In its most recent consideration of the exception, *United States v. Gaubert, supra,* the Court further illuminated the *Berkovitz* two-prong test. As to the first prong, the Court defined a discretionary act as "one that involves choice or judgment." *Id.* 499 U.S. at 325, 111 S.Ct. at 1275. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* at 322, 111 S.Ct. at 1273 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958).

■ In discussing the contours of the second prong, the Court explained that

> [w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.... The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and whether they are susceptible to policy analysis.

*Id.* at 324–25, 111 S.Ct. at 1274–75. Thus, the Court reasoned that the discretionary function exception could apply to decisions made at the operational level as well as to conduct at the policy or planning level, if those decisions are made in furtherance of the policy scheme.

■ These guidelines provide an analytic framework for the lower courts, who must decide whether the circumstances in each case fall within the scope of the exception. Since the *Gaubert* decision, two circuit courts have held that claims against the MSHA for the negligent inspection of mines do not fall within the discretionary function exception. *See Myers v. United States,* 17 F.3d 890 (6th Cir.1994) (assessments of mine safety inspectors are not protected by the exception because their discretion is not grounded in public policy); *Ayala v. United States,* 980 F.2d 1342 (10th Cir.1992) (MSHA inspector's offer of technical advice later found to be erroneous was not protected by discretionary function exception; nature of the challenged conduct was not grounded in the exercise of policy judgment). Prior to *Gaubert,* many courts reached the opposite conclusion. *See, e.g., Hylin v. United States,* 755 F.2d 551 (7th Cir.1985) (endorsed in *Baxley v. United States,* 767 F.2d 1095, 1098 (4th Cir.1985)); *Russell v. United States,* 763 F.2d 786 (10th Cir.1985); and *Marn v. United States,* 681 F.Supp. 266 (W.D.Pa.1987). *Cf. Caplan v. United States,* 877 F.2d 1314 (6th Cir.1989) (Forest Service's failure to warn contractor of dangerous conditions not protected by discretionary function exception).

In *Myers,* the Sixth Circuit reasoned that, while mine inspections do involve some degree of discretion and choice, the decisions to be made by the inspectors are not sufficiently grounded in policy to meet the second prong of the *Berkovitz* test:

> [T]he balancing of the interests of the miners and the mine owners, and the consideration of the most effective use of limited MSHA resources has been done, first by Congress and then, to a greater degree, by the Secretary of the Department of Labor in promulgating the various safety regulations. The MSHA inspectors whose conduct is at issue in the present case are not authorized to reweigh these interests on a case-by-case basis. Rather, they are to determine compliance and, in the event of non-compliance, issue the mandatory citations and orders.... Accordingly ... we hold that the assessments made by MSHA inspectors are not policy decision protected by the discretionary function exception to

the FTCA. Instead, the choices inherent in these assessments are to be made by MSHA inspectors in light of their own observations, informed by professional judgment and knowledge of the industry. Considerations of "political, social, or economic policy" are not authorized to play a part in these assessments.

17 F.3d at 898–99 (citations omitted).

However, this court recently disagreed with the *Myers* rationale in a case very similar to the one at hand. In *Bernaldes v. United States*, 877 F.Supp. 301, 307 (W.D.Va. 1995), Judge Michael wrote that the *Myers* court "erroneously concluded that an MSHA inspector is required to make substantive policy decisions before the discretionary function exception applies.... Once a court concludes that a government agent exercises discretion, if that discretion is exercised in the course of carrying out the agent's policy-driven duties, then the discretionary function exception will cover the agent's actions." (citing *Baum*, 986 F.2d at 721).

In *Bernaldes*, the court found that the plaintiff was barred from bringing a wrongful death claim against the government based on the allegedly negligent inspection of a mine by MSHA inspectors. Its conclusion that the MSHA inspectors exercise policy-based discretion was based on the reasoning of *Gaubert* that "acts ... based on the purposes that the regulatory regime seeks to accomplish" fall within the discretionary function exception, regardless of whether those acts are made at the policy level or at the operational level. *Id.* at 307; *see Gaubert*, 499 U.S. at 325, n. 7, 326, 111 S.Ct. at 1275, n. 7, 1275; *see also United States v. Varig Airlines*, 467 U.S. 797, 820, 104 S.Ct. 2755, 2768, 81 L.Ed.2d 660 (1984) (discretionary function exception protected FAA employees in executing spot-check inspection program because the program "specifically empowered [employees] to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources"). The *Bernaldes* decision illustrates the breadth of the policy-based aspect of the discretionary function exception.

In the case at hand, the plaintiff's allegations do not demonstrate that the acts complained of fall outside of that broad scope. The plaintiff's charge that the agency failed to properly train its inspectors clearly touches an area over which the agency has full discretion. Congress has explicitly authorized the Secretary of the Department of Labor and his representatives to establish rules and safety standards for mining operations as well as the means of enforcing those rules. *See* 30 U.S.C. § 811(a) ("The Secretary shall by rule ... develop, promulgate, and revise as may be appropriate, improved mandatory health or safety standards for the protection of life and prevention of injuries in coal or other mines."); 30 U.S.C. § 813(a) ("[T]he Secretary shall make inspections of each underground coal or other mine in its entirety at least four times a year.... The Secretary shall develop guidelines for additional inspections of mines based on criteria including, but not limited to, the hazards found in mines subject to this [Act,] and his experience under this [Act] and other health and safety laws."). Determining the qualifications of its inspectors and monitoring their job performance falls squarely within the agency's authority to advance the purposes of the mining safety Act. *See Varig Airlines*, 467 U.S. at 819, 104 S.Ct. at 2767 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."). The discretionary function exception to the FTCA intentionally protects these actions. "Judicial intervention in such decisionmaking through private tort suits would require the courts to 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policy-making that the discretionary function exception was designed to prevent." *Id.* at 820, 104 S.Ct. at 2768.

The Secretary's representatives, those who actually carry out the safety inspections and enforce the policy judgments of the agency, are likewise protected by the exception for

their evaluations of a mine's safety. An inspector's decisions regarding mine safety and the issuance of citations are discretionary and grounded in public policy. *Bernaldes,* 877 F.Supp. at 308 ("When applying the regulations promulgated pursuant to the statute, MSHA inspectors must base their inspections on the policy of promoting the health and safety of the nation's coal miners, since the enforcement of health and safety standards is the purpose of the inspections."). The Mine Safety Act provides that

> If, upon inspection or investigation, the Secretary or his authorized representative *believes* that an operator of a coal or other mine subject to this [Act] has violated this [Act,] or any mandatory health or safety standard, rule, order or regulation promulgated pursuant to this [Act,] he shall, with reasonable promptness, issue a citation to the operator.

30 U.S.C. § 814(a) (emphasis added). This provision illustrates that inspectors are inspecting mines and deciding whether to issue citations in furtherance of the goals of the Mine Safety Act. Therefore, the inspectors are taking actions that are within "the purview of the policies behind the statutes" and meet the second part of the test. *Gaubert,* 499 U.S. at 333, 111 S.Ct. at 1279.

In the present case, then, all of the allegedly negligent actions taken by the defendants fall within the discretionary function exception and do not form a proper basis for a lawsuit under the FTCA. The matters complained of are simply not actionable. As a result, this court finds that it has no subject matter jurisdiction over this action and must dismiss it accordingly. An appropriate order shall issue this day.