Robert Kevin **FLEMING**,
et al., Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

No. 2:98CV00215.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Sept. 28, 1999.

---

Lori Dawn Thompson, Gentry, Locke, Rakes & Moore, Roanoke, VA, Thomas Ralph Scott, Jr., Street, Street, Street, Scott & Bowman, Grundy, VA, Simon Delano Roberts Moore, Leisa Kube Ciaffone, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Plaintiffs.

Phyllis J. Pyles, Somesha Ferdinand, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, for U.S.

## OPINION AND ORDER

JONES, District Judge.

The plaintiffs in these actions under the Federal Tort Claims Act contend that a federal agency failed to adequately inspect an underground coal mine and enforce federal mine safety laws, leading to a disastrous mine explosion. The government has moved to dismiss on the grounds that the acts complained of were matters of governmental discretion over which the court has no jurisdiction and because the plaintiffs' suit papers do not adequately set forth a cause of action under Virginia law. After considering the arguments of the parties, however, I find that the court does have jurisdiction and that the pleadings sufficiently state a cause of action.

### I. PROCEDURAL BACKGROUND.

On December 7, 1998, the seven plaintiffs[1] filed separate actions,[2] identical in substance, pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671–2680 (West 1994 & Supp.1999) ("FTCA"). The plaintiffs contend that the United States is liable for damages resulting from a underground coal mine explosion on December 7, 1992, at the Southmountain No. 3 Mine, in Wise County,

Virginia. The basis for the claimed liability of the United States under the FTCA is alleged failures by employees of the Mine Safety and Health Administration ("MSHA"), an agency of the United States, in connection with inspections of the coal mine and enforcement of the federal mine safety laws.

The United States filed an identical motion to dismiss in each action, contending that the court was without subject matter jurisdiction because the acts complained of fell within the discretionary function exception to the FTCA.[3] In addition, the United States asserts that the actions fail to state claims upon which relief may be granted.

The separate actions were consolidated for pretrial proceedings, and the parties have briefed and argued the motions to dismiss, which are now ripe for decision.

### II. SUBJECT MATTER JURISDICTION.

■ The FTCA contains a limited waiver of sovereign immunity, and the discretionary function exception to liability constitutes one of the limits on that waiver. *See Williams v. United States,* 50 F.3d 299, 304–05 (4th Cir.1995). Accordingly, if the discretionary function exception applies, then this court is without subject matter jurisdiction of the case. *Id.* at 305. The United States has thus properly raised the discretionary function issue in a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1).

■ It is also settled that the plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1), *id.* at 304, and the court may consider matters outside of the pleadings, including affidavits, depositions, or live testimony. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Unlike the procedure under Rule 12(b)(6), the court may

---

**1.** The individual plaintiffs are Robert Kevin Fleming, Linda Sturgill, Elizabeth Mullins, Eula Gray Carlton, Linda Sue Vanover, Audrey L. Sturgill, and Loraine Owens. All of the plaintiffs except Fleming are suing in representative capacities for wrongful deaths on behalf of deceased coal miners.

**2.** Cases Nos. 2:98CV00215–221.

**3.** *See* 28 U.S.C.A. § 2680(a) (West 1994).

weigh the evidence in order to decide whether it has jurisdiction. *Id.*

In the present case, the United States has filed an affidavit of MSHA's district manager, along with copies of the reports of quarterly inspections by MSHA of Southmountain Mine No. 3 from October of 1991 until October of 1992. The plaintiffs, in turn, have filed a copy of the report of MSHA's internal review of MSHA's actions relating to the mine explosion, dated March 25, 1994.[4] None of the parties have objected to the court's consideration of these materials, nor has any party requested the opportunity to submit further evidence on the jurisdictional issue.

## III. THE FACTS.

The tragic events at the Southmountain No. 3 Mine were the result of an explosion on December 7, 1992, at approximately 6:15 a.m. Eight miners were killed and one injured.[5]

According to MSHA, an initial explosion occurred when an open flame from a butane cigarette lighter ignited methane gas in the No. 2 crosscut between Nos. 1 and 2 entries on the 1 Left working section of the mine.[6] This methane gas explosion in turn ignited coal dust in 1 Left, and the coal dust explosion "continued to propagate the entire distance of the No. 1 West Main entries to the surface." *Internal Review* 1.

MSHA's accident investigators determined that the bleeder system[7] from the pillared areas of 1 Left (and other areas of the mine) had not been maintained by the mine operator in order to continuously move methane gas away. In particular, the condition of the mine roof in the bleeder entry had deteriorated to the point that the bleeder entry had not been examined for several weeks. Because other ventilation controls on 1 Left were not working, methane gas migrated into the area of the initial explosion.

Following the accident, MSHA's inspectors also determined that the level of combustible coal dust in the mine helped cause the explosion.

MSHA concluded that the mine operator's failure to maintain adequate ventilation, conduct adequate preshift and weekly examinations of the mine, and prohibit smoking underground by the coal miners[8] all "contributed materially" to the cause of the accident. *Internal Review* 3.[9] MSHA's

---

4. U.S. Dept. of Labor, Mine Safety & Health Admin., *Internal Review of MSHA's Actions at the # 3 Mine Southmountain Coal Co., Inc. Wise County, Virginia* (1994) (hereafter *Internal Review*).

5. Explosive concentrations of methane gas hampered recovery efforts, and the bodies of the deceased were not brought to the surface until the evening of December 12.

6. The coal was mined by the "room-and-pillar" system, involving the excavation of a series of "rooms" into the horizontal coal seam, leaving "pillars" or columns of coal to help support the mine roof. An "entry" is a passage used for haulage, ventilation, or mining. A "crosscut" is a passageway between entries, often for ventilation purposes. *See* Kentucky Coal Council, *Glossary of Mining Terms* (visited Sept. 21, 1999) <http://www.coaleducation.org/glossary.htm>.

7. A "bleeder" or "bleeder entry" is a special air course developed and maintained as part of the mine ventilation system to move meth-

ane gas away from the active workings. *See* Kentucky Coal Council, *supra* note 5.

8. Smoking and smoking materials are prohibited in underground coal mines, and mine operators must develop programs to enforce this prohibition. *See* 30 C.F.R. § 75.1702 (1998). MSHA's accident investigators found that three of the victims here carried smoking materials. Two unopened packs of cigarettes and two butane cigarette lighters were found in a lunch container near the initial site of the explosion, and one butane lighter was found on the floor of the mine. Miners told the investigators that lunch containers were not regularly searched by management, as required by the mine's approved program. *Internal Review* 39.

9. Southmountain Coal, Inc. and certain of its employees pleaded guilty to criminal violations of the mine safety laws in connection with the disaster, and the corporation was fined $150,268 and ordered to pay restitution of $900,000. *See United States v. Southmoun-*

internal review did not find that any failures by MSHA caused or contributed to the accident. *Id.*

## IV. THE DISCRETIONARY FUNCTION EXCEPTION.

The FTCA provides that the United States is not liable for:

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a) (West 1994).

The statute does not otherwise define "discretionary function or duty," and "the exception has a fluid quality that escapes particular confinement." *Williams v. United States,* 50 F.3d at 309. The contours of the exception remain "ill-defined, primarily because 'courts have encountered some difficulty in applying [the discretionary function exception's] rather general terms to the myriad of fact patterns that predictably present themselves as litigants attempt to measure governmental conduct by the measuring stick of state tort law.' " *Estate of Bernaldes v. United States,* 877 F.Supp. 301, 304 (W.D.Va.1995) (quoting *Baum v. United States,* 986 F.2d 716, 719–20 (4th Cir. 1993)), *aff'd,* 81 F.3d 428 (4th Cir.1996).[10]

■ In general terms, the Supreme Court has mandated a two-part test to be used to determine whether the exception bars a suit under the FTCA. *See United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). First, the court must determine if the government employee's act in question was

discretionary or mandatory. *Id.* at 322, 111 S.Ct. 1267. Second, if the act was discretionary, then it must be determined if the employee's discretion was based on considerations of governmental policy. *Id.* at 323, 111 S.Ct. 1267.

■ The United States contends that the Fourth Circuit's ruling in *Estate of Bernaldes v. United States,* 81 F.3d 428 (4th Cir.1996), and the holding of this court in *Deel v. United States,* 923 F.Supp. 98 (W.D.Va.1996), both involving MSHA, are dispositive of the present cases. However, neither of those opinions dealt with the present situation, where the plaintiffs premise their claims on MSHA's failure to adhere to its own mandatory policies and procedures.

In *Bernaldes,* the plaintiff brought suit against the United States alleging that MSHA had a duty to discover safety violations at an aggregate mine and was negligent in failing to find safety violations. The plaintiff did not allege a violation of mandatory MSHA rules, regulations, and procedures. In *Deel,* the plaintiff alleged that MSHA investigators were not "thorough" in their investigation, that they should have issued citations for noncompliance with safety regulations, that they should have required additional roof supports, and that they failed to adequately train inspectors to conduct inspections. There is no indication that the plaintiff alleged that MSHA inspectors violated mandatory rules, regulations, and procedures.

The United States reads *Estate of Bernaldes* and *Deel* to preclude any suit for negligent inspection and enforcement by MSHA. (Reply in Supp. of Def.'s Mot. to Dismiss 13.) However, the application of the discretionary function exception "is highly fact-specific." *Estate of Bernaldes,* 877 F.Supp. at 305. Based on the facts of

---

*tain Coal, Inc.,* No. 2:94CR00002 (W.D.Va. May 5, 1995).

**10.** For an excellent criticism of the present state of the law surrounding the discretionary

function exception of the FTCA, see Amy M. Hackman, Note, *The Discretionary Function Exception to the Federal Tort Claims Act: How Much is Enough?,* 19 Campbell L.Rev. 411 (1997).

this case, I find there has been a sufficient showing that the conduct complained of was of a mandatory nature.

In their brief, the plaintiffs detail violations of specific MSHA policies, as follows:

(1) The 1978 *Coal Mine Health and Safety Inspection Manual,* the 1982 *Coal Mine Inspection Manual on Procedures, Orders, Citations and Inspection Reports,* and the June 1992 *Coal General Inspection Procedures Handbook* each establish procedures applicable to inspections of underground coal mines. Relevant provisions of these publications required inspectors to inspect every working area in the mine. During the last quarterly inspection prior to the accident, a District Five inspector did not;

(2) The 1978 Coal Mine Health and Safety Inspection Manual for Underground Coal Mines (pages 16–22) and the 1992 *Coal General Inspection Procedures Handbook* (pages 48–54) required inspectors to conduct rock dust surveys during each regular inspection for each advancing inspection. A review of inspection reports indicated that District Five personnel had not collected any rock dust samples at the No. 3 Mine since May 21, 1991. Between May 1991 and the time of the explosion, District Five personnel conducted six quarterly inspections of the mine. District Five personnel did not follow established procedures while conducting rock dust surveys at the No. 3 Mine. [T]he results of the rock dust survey conducted following the accident indicate that the incombustible content of the mine dust was significantly substandard at the time of the explosion;

(3) The review team determined that inspection personnel did not routinely inspect the [methane] sensor to determine whether the vent holes and the filters were clogged with water, dust or other material as required by the July 1988

MSHA *Program Policy Manual* (Vol. V. page 40);

(4) District Five electrical inspection personnel were not provided with methane monitor test kits with approximately two and one-half percent (2.5%) methane-air mixture and adapters for all types of methane monitors as required by the June 1983 *Coal Mine Inspection Manual: Underground Electrical Inspections;* and

(5) The documentation of the quarterly inspections of the No. 3 Mine conducted during the third and fourth quarters of fiscal year 1992 fell significantly short of the requirements of MSHA procedures in effect at that time.

(Mem. in Opp. to Def.'s Mot. to Dismiss 18–19.) These allegations find support in the materials presented to the court. *See Internal Review* 5–7, 36–38, 42–43.

In *Estate of Bernaldes,* the plaintiff relied solely on general regulations, rather than specific requirements governing the MSHA inspectors' conduct. The district court contrasted the situation with that described in *McMichael v. United States,* 856 F.2d 1026 (8th Cir.1988), where a federal munitions factory inspector failed to follow the requirements of a safety checklist. According to the *Estate of Bernaldes* court, "where inspectors are given a detailed check-list to guide their actions there is no discretion in the inspection process." 877 F.Supp. at 306.[11]

The United States contends that the MSHA handbooks and manuals cited by the plaintiffs are ineligible to show the mandatory nature of the duties required. However, they are clearly as sufficiently valid as evidence of governmental policy as the safety checklist was in *McMichael.*

The present case is similar to *Appley Bros. v. United States,* 164 F.3d 1164 (8th Cir.1999), where farmers, farm corporations, and grain elevators that stored grain

---

**11.** The Fourth Circuit affirmed *Estate of Bernaldes* expressly on the reasoning of the district court's opinion. 81 F.3d at 429.

at a federally-licensed grain warehouse brought suit under the FTCA for breach of a mandatory duty to inspect. The plaintiffs alleged that United States Department of Agriculture ("USDA") inspectors should have discovered grain shortages at the warehouse and, consequently, revoked the warehouse's license before the plaintiffs deposited grain there and suffered damage. *Id.* at 1167. The court found that a USDA "Grain Warehouse Examiner's Handbook" required the inspector to check to see if a previously-noted inspection deficiency had been corrected. Since the inspector failed to so, he breached this mandatory duty. *Id.* at 1169.

Finally, the United States contends that even if the mandatory requirements cited by the plaintiffs were violated, they were "inconsequential" and unrelated to the explosion. (Reply in Supp. of Def.'s Mot. to Dismiss 7.)

It is correct that there is currently no proof that any failures by MSHA inspectors helped cause the explosion. Unless such proof is shown, no recovery is possible. Where the objection to jurisdiction is bound up with the merits of the claim, however, it is appropriate to defer decision until the merits are reached. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982).

## V. FAILURE TO STATE A CLAIM.

■ Under the FTCA, the liability of the United States exists only in circumstances where a private person would be liable to the plaintiffs under the law of the place where the act or omission took place. *See* 28 U.S.C.A. § 1346(b) (West Supp. 1999). The plaintiffs here contend that the United States is liable under the common law "Good Samaritan doctrine," as applied in Virginia. *See* Restatement (Second) of Torts § 324A (1965).

The United States does not contest the theoretical availability of this doctrine of tort liability, *see Creasy v. United States,* 645 F.Supp. 853, 856 (W.D.Va.1986), but argues that the elements of the cause of action "are not met under the circum-

stances of this case." (Mem. in Supp. of Def.'s Mot. to Dismiss 16.)

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) may be granted only if the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The rules thus do not require the complaint to set forth the factual basis of the suit, but rather a party is required only to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a); *See Tiller v. Hobart Corp.,* 58 F.Supp.2d 688, 689 (W.D.Va.1999).

The plaintiffs may eventually be unable to prove the necessary elements of their tort claim. Nevertheless, under the liberal federal pleading standards, there has been a sufficient statement of the claim by each plaintiff to withstand a motion to dismiss.

## VI. CONCLUSION.

For the foregoing reasons, it is **OR-DERED** that the defendant's motion to dismiss in each of these cases is denied.