Collie E. BERRY, Individually as Executor of Estate of Lana Jo Berry, Deceased, and On Behalf of All Statutory Beneficiaries Under the Arkansas Wrongful Death Statute Plaintiff

v.

LAND AND LAKE TOURS, INC., d/b/a White and Yellow Duck Sightseeing Tours, Tennessee Farmers Mutual Insurance Company, and United States of America Defendants

Sandra Johnson, as Personal Representative of the Estate of Vernon Johnson, Deceased Plaintiff

v.

Land and Lake Tours, Inc. and United States of America Defendants

James Edward Douglas McGUIRK, Individually and as Surviving Spouse and Administrator of the Estate of Melanie Nunnery McGuirk, Deceased Plaintiff

v.

Land and Lake Tours, Inc., d/b/a White and Yellow Duck Sightseeing Tours, and United States of America Defendants

Laura L. Todd, Individually and as Surviving Spouse and Administrator of the Estate of Ronald Todd, Deceased; as Surviving Parent and Administrator of Thomas Todd, a Minor, Deceased, and as Surviving Parent and Administrator of the Estate of Emily Todd, a Minor, Deceased Plaintiff

v.

Land and Lake Tours, Inc., d/b/a White and Yellow Duck Sightseeing Tours and United States of America Defendants

Mark Anthony Beasley and Mary Thompson, Co-administrators of the Estate of Andrea Marie Beasley, Deceased, and Mark Anthony Beasley, Administrator of the Estate of Logan Reed Beasley, Deceased Plaintiffs

v.

Land and Lake Tours, Inc., d/b/a, White and Yellow Duck Sightseeing Tours, and United States of America Defendants

Robert Joseph Powers, Individually and as Special Administrator of the Estate of Danna Lynne Powers, Deceased, and as Guardian of the Person and Estate of Madeline Rose Powers, a minor, and as parent and next friend of Jebulon Hays Powers, a minor, Danny Morse, Sonny L. Morse, Tim Morse, and Matt Morse Plaintiff

v.

United States of America, and Land and Lake Tours d/b/a White and Yellow Duck Sightseeing Tours Defendants

Martin Patton, Individually, and as Administrator of the Estates of Floye Patton, Deceased, James L. Patton, Deceased, and Jennifer Patton, Deceased, and Mary Ann Curry, Individually, and as Guardian of the Person and Estate of James F. Patton, a Minor Plaintiffs

v.

United States of America, and Land and Lake Tours d/b/a White and Yellow Duck Sightseeing Tours Defendants

No. 99–CV–6049, 99–CV–6052, 00–CV–6010, 00–CV–6011, 99–CV–6102, 00–CV–6195, 00–CV–6116.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

July 6, 2001.

Gary Ray Bratton, Gregory W. O'Neal, Bratton & O'Neal, PC, R. Layne Holley, McNabb, Holley, Waldrop & Bragorgos, PLLC, Mike Flexsenhar, Sacharin, Kircksey & Flexsenhar, Memphis, TN, M. Norwood Phillips, Shackleford, Phillips, Wineland & Ratcliff, P.A., El Dorado, Kenneth Mascagni, Robert Don Evans, Jr., Cook, Yancey, King & Galloway, Shreveport, LA, Winslow Drummond, McMath, Vehik, Drummond, Harrison & Ledbetter, Little Rock, Charles G. Alagood, Donald S. Ryan, Dodds, Kidd, Ryan & Moore, Little Rock, for Plaintiff or Petitioner. .

Robert L. Henry, III, Barber, McCaskill, Jones & Hale, P.A., Little Rock, Q. Byrum Hurst, Hurst Law Offices, Hot Springs, David A. Hodges, Little Rock, Don G. Owens, III, Memphis, TN, Rupert M. Mitsch, Paul F. Figley, James E. Howard, U.S. Department of Justice, Washington, DC, Larry R. McCord, P.K. Holmes, III, U.S. Attorney's Office, Fort Smith, for Defendant or Respondent.

## *MEMORANDUM OPINION & ORDER*

DAWSON, District Judge.

This matter is before the Court on Defendant United States of America's motion for summary judgment. The Court finds, for the reasons set forth below, that the Government's motion should be and hereby is DENIED.

Seven actions are now pending before the Court based on the May 1, 1999 sinking of the Miss Majestic, an amphibious truck operated by Defendant Land and Lake Tours, which resulted in the death of thirteen of the twenty-one passengers onboard. The Plaintiffs assert a cause of action against the Government under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.*, and 28 U.S.C. § 1346(b), alleging that the United States Coast Guard was negligent in its inspection of the Miss Majestic.

█ The Government moves for summary judgment, arguing that it is immune from liability under the discretionary function exception to the FTCA. 28 U.S.C. § 2680(a). This exception precludes a plaintiff from seeking damages for:

[a]ny claim...based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. *Id.*

If the discretionary function exception applies, then the Court lacks subject matter jurisdiction to consider any issue of negligence. *Dalehite v. United States,* 346 U.S. 15, 32, 73 S.Ct. 956, 966, 97 L.Ed. 1427 (1953); *Dykstra v. United States,* 140 F.3d 791, 795 (8th Cir.1998).

The inquiry in this case is whether the challenged acts or omissions by the Coast Guard inspector were discretionary in nature or whether they were controlled by mandatory statutes and regulations. *See United States v. Gaubert,* 499 U.S. 315, 328, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). If the inspector's duties were mandatory, and if the inspector violated these duties, the discretionary function exception will not provide immunity because there is no room for choice and no discretion involved. *See id.* at 324, 111 S.Ct. 1267.

The Coast Guard administers a marine vessel inspection program pursuant to 42 U.S.C. § 3301, *et seq.* The inspection of small passenger vessels such as the Miss Majestic is governed by 46 C.F.R. Subchapter T. There are three areas of the inspection process that the Court finds to be the primary focus of these cases.

### 1. Bilge Alarm

█ The first concerns the installation of a bilge alarm on the Miss Majestic.

Such an alarm, which would have alerted the master of the vessel that the boat was flooding, was required to be installed by March 11, 1999. *See* 46 C.F.R. §§ 182.530, 182.115. When the Miss Majestic was inspected on February 23, 1999, the inspector gave Arville Woodall, a mechanic who worked for Land and Lake and acted as the vessel representative during the inspection, a worklist delineating various deficiencies, including the need to install a bilge alarm. (Gov't Ex. 5.) The worklist did not, however, specify a compliance date and the Miss Majestic did not have a bilge alarm installed when it sank on May 1, 1999.

The regulations provide that if "a vessel or her equipment is found not to conform to the requirements of law or regulations . . ., the requirements which must be met will be listed on Form CG–835, Notice of Merchant Marine Inspection Requirements." 46 C.F.R. § 2.01–10. The significance of the issuance of a CG–835 notice is that it triggers a "tickler" system. Had a CG–835 notice been issued for the Miss Majestic's lack of a bilge alarm, the deficiency would have been entered into the Marine Safety Information System (MSIS) and, on March 11, 1999, the deadline for compliance, the deficiency would have been brought to the attention of the inspector by the "tickler" feature of the MSIS and various steps would have then been taken to ensure compliance.

 The Government argues that the inspector had discretion in deciding whether to issue a CG–835 notice of deficiency for the bilge alarm. The Government relies upon a portion of the Marine Safety Manual (MSM) which provides, "In instances when deficiencies are not controversial and corrective action is being taken, the inspector may use discretion in determining whether or not to issue Form CG–835." (MSM 2.C.3, Gov't Ex. 8 at 2–7.) The MSM is an internal manual drafted by the Coast Guard to provide their inspectors with "consistent and uniform interpretation and application of . . . laws and regulations as they relate to merchant vessel inspections." (MSM 1.E.2 Gov't Ex. 8 at 1–9.) While it is an important document, it cannot overrule a regulation. The Court is at a loss to understand how the Government could interpret the applicable regulation as giving the inspector discretion, as the regulation specifically provides that deficiencies which do not conform to the "requirements of law or regulations *will be* listed on Form CG–835." 46 C.F.R. § 2.01–10. "A statute is the command of the sovereign, and an agency implementing a statute may not ignore, or provide its own substitute for, a standard articulated in the statute." *Friends of Richards–Gebaur Airport v. Federal Aviation Admin.*, 251 F.3d 1178, 1195 (8th Cir.2001).

The only way the Court can reconcile the MSM with the regulation is to interpret the MSM to mean that certain deficiencies may not necessarily violate the "requirements of law or regulations," but may nevertheless still constitute deficiencies in the inspector's mind and the inspector has discretion in deciding whether to issue a CG–835 notice for this type of deficiency. The deficiency in this case, however, was not this type, as the bilge alarm was required by regulation to be installed by March 11, 1999. It therefore appears that the issuance of the CG–835 notice was mandatory, not discretionary.

**2. Notice to Master**

 It also appears that the inspector had a non-discretionary duty to notify the master of the vessel, Elizabeth Helmbrecht, of the bilge-alarm deficiency. The MSM itself makes clear that when deficiencies are found, "the master of the vessel *must* be notified," even though the

vessel representative, Woodall in this case, may be directly concerned with correction of the deficiencies. (MSM 2.C.2.b Gov't Ex. 8 at 2–6.) The Government points to language in the same section of the MSM indicating that if the master is not available, the CG–835 notice can be issued to the representative. The Government argues that Helmbrecht was not available during the inspection, and therefore it was proper for the inspector to give notice of the deficiencies to Woodall. While the CG–835 notice may be issued to the representative if the master is not available, the Court interprets the MSM as still requiring some type of notification to the master of the deficiencies.

Plaintiffs contend that Helmbrecht would not have taken the Miss Majestic out had she known of the bilge-alarm deficiency. The Government counters that in her deposition, Helmbrecht testified that the owner of Land and Lake had in fact informed her that an alarm system was going to be installed. (Gov't Reply Ex. 3 at 13.) While Helmbrecht might have known that an alarm was going to be installed, this does not excuse the inspector's failure to notify her that one was actually required by law to be installed by March 11, 1999.

### 3. Stowage of Life Jackets

■ One of the survivors of the sinking of the Miss Majestic testified before the Marine Board of Investigation that when he realized the vessel was sinking, he "started pulling on the life vests that were above the overhead compartment ... [but] they were wedged in there so tight, ... it was almost impossible to get them out." (Pls.' Ex. 24 at 612.) The regulations provide that if life jackets are stowed overhead, they must be supported in a manner that allows quick release for distribution. See 46 C.F.R. § 180.78(a)(3). The inspector in this case could not recall whether he checked the accessibility of the life jackets.

(Pls.' Ex. 23 at 136.) The inspector's checklist, contained in the Coast Guard's T–Boat Inspection Book, requires inspection of the quick-release mechanism for life jackets. (Pls.' Ex. 17 at 15.) The Eighth Circuit has held that such checklists establish a prescribed course of action for inspectors to follow and inspectors have a duty to adhere to them. *See McMichael v. United States,* 856 F.2d 1026, 1033 (8th Cir.1988) (Defense Department inspection checklist).

### Conclusion

Based on the foregoing, it does not appear that the discretionary function exception applies. Accordingly, the Government's motion for summary judgment is DENIED.. The Government, however, may renew its motion, and both sides may present any additional evidence on this issue at the trial of this matter on August 13, 2001.